2. The court's order with respect to the default judgment motion, dated Deceber 23, 1993, is hereby vacated *ab initio*.

---

**Diane KEMP, Personal Representative of the Estate of Terrance Clay Kemp, Deceased and Diane Kemp, Individually, Plaintiff,**

v.

**PFIZER INC., a foreign corporation, and Shiley, Inc., a foreign corporation, jointly and severally, Defendants.**

**No. 92–40591.**

United States District Court,
E.D. Michigan,
Southern Division.

April 10, 1997.

David D. Patton & Associates by Ellen Bartman Jannette, David D. Patton, Bloomfield Hills, MI, for Plaintiff.

Clark Hill, PLC by Kevin S. Hendrick, Detroit, MI, for defendants.

### *STIPULATION AND ORDER WITHDRAWING MOTION AND VACATING ORDER*

GADOLA, District Judge.

The parties, having settled the above captioned matter, stipulate as follows:

1. Plaintiff's motion for default judgment dated October 13, 1993, and all allegations made in connection therewith, and defendants' response thereto, are hereby withdrawn *ab initio* and dismissed with prejudice.

---

**Claudia MURPHY, Plaintiff,**

v.

**BIRCHTREE DENTAL, P.C., a Michigan Corporation, and Dr. Arthur Fediuk, jointly and severally, Defendants.**

**Civil Action No. 96–71358.**

United States District Court,
E.D. Michigan,
Southern Division.

May 30, 1997.

Steven Z. Cohen, Cohen & Ellias, P.C., Bloomfield Hills, MI, for Plaintiff.

Lorrey Michela, Novara, Tesija & Michela, P.C., Southfield, MI, for Defendants.

## OPINION AND ORDER

FEIKENS, District Judge.

Plaintiff Claudia Murphy worked as a dental hygienist for defendants Birchtree Dental, P.C. and Dr. Arthur Fediuk (a Birchtree partner) from October 1984 until August 1995. She now claims wrongful discharge, tortious interference with contract, and breach of fiduciary duty in the administration of her pension funds in violation of the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1104. Defendants have moved for summary judgment. For the reasons stated below, defendants' motion is granted as to plaintiff's tortious interference claim but denied as to her wrongful discharge claim.

As regards the ERISA claim, defendants' only objection is that Dr. Fediuk was improperly named, since he was never the plan fiduciary. Because plaintiff has moved for leave to amend her complaint to name the actual fiduciary, Dr. Richard Martella, and has dropped her ERISA claim against Dr. Fediuk, defendants' motion to dismiss this claim is moot. Plaintiff's motion to amend is granted.

## I. Standard of Review

A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ. P. 56(c). In deciding defendants' motion, I must consider whether the evidence is such that a reasonable jury could return a verdict for plaintiff. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1478 (6th Cir.1989). The facts must be viewed in the light most favorable to plaintiff, the non-moving party. *Monette v. Electronic Data Systems,* 90 F.3d 1173 (6th Cir.1996), citing *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970).

## II. Wrongful discharge

Murphy claims that she was wrongfully discharged in violation of a just cause employment relationship. She argues that just cause employment was created by oral representations by management and statements in Birchtree's employee handbook. Defendants maintain that Murphy was an at will employee. They also say they fired Murphy because of her difficulties with other employees. Defendants do not explicitly state whether they believe any problems with other employees would constitute just cause for Murphy's discharge, and they do not seek summary judgment on that basis.

The parameters of just cause employment are laid out in three Michigan Supreme Court cases, *Toussaint v. Blue Cross & Blue Shield of Michigan,* 408 Mich. 579, 292 N.W.2d 880 (1980); *Rowe v. Montgomery Ward & Co., Inc.,* 437 Mich. 627, 473 N.W.2d

268 (1991); and *Rood v. General Dynamics,* 444 Mich. 107, 507 N.W.2d 591 (1993).[1] *Toussaint* held that just cause employment may be established by express agreement (oral or written), or as a result of an employer's policy statements which create a "legitimate expectation" of just cause employment. While the first prong is based in contract, the "legitimate expectations" prong recognizes enforceable obligations that arise "outside the operation of normal contract principles." *Rood* at 117, 507 N.W.2d 591, citing *In re Certified Question (Bankey v. Storer Broadcasting Co.),* 432 Mich. 438, 458, 443 N.W.2d 112 (1989).

Under the contractual prong, an objective test is used to determine whether the parties mutually assented to just cause employment. *Rowe* at 640, 473 N.W.2d 268. The question is thus whether a reasonable person could have interpreted the words or conduct to establish just cause employment, taking into account all relevant circumstances surrounding the transaction. *Rood* at 119, 507 N.W.2d 591, citing *Rowe* at 641, 473 N.W.2d 268. Oral statements must be "clear and unequivocal" in order to overcome the presumption of at will employment. *Rowe* at 640, 473 N.W.2d 268.

The "legitimate expectations" prong is based in public policy. Where an employer has put in place policies establishing discharge only for cause, and benefits from the good will generated by those policies, just cause employment will be enforced. *Toussaint* at 613, 292 N.W.2d 880. In order to create legitimate expectations, a policy statement must rise to the level of a promise (express or implied) of just cause employment; in other words it must be "reasonably capable of instilling legitimate expectations of just cause employment." *Rood* at 139, 507 N.W.2d 591, citing *Renny v. Port Huron Hospital,* 427 Mich. 415, 398 N.W.2d 327 (1986). The policy must also be "reasonably related to employee termination." *Rood* at 139, 507 N.W.2d 591.

Even if the policy statement does not contain an express just cause statement, it can create legitimate expectations if it sets forth disciplinary procedures and sanctions and does not retain the right to discharge at will. *Rood* at 140, 507 N.W.2d 591, citing *Renny* at 430–431, 398 N.W.2d 327. In *Rood,* although neither a "Guide to Good Conduct," nor an annual evaluation policy, nor a merit pay policy were capable of instilling legitimate expectations of just cause employment on their own, when considered together they could reasonably be thought to instill such expectations. *Rood* at 142–143, 507 N.W.2d 591.

Thus an employee handbook or other policy statement can establish contractual rights to just cause employment. *Toussaint* at 613, 292 N.W.2d 880. "We hold that employer statements of policy … can give rise to contractual rights in employees without evidence that the parties mutually agreed that the policy statements would create contractual rights in the employee." *Toussaint* at 614–615, 292 N.W.2d 880. This is true even where the policy statement is signed by neither party, can be unilaterally amended by the employer without notice to the employee, contains no reference to a specific employee, and the employee did not learn of the policy until after his hiring. *Id.* Where the employer's policies relating to discharge are subject to differing interpretations, the issue is for the jury. *Rood* at 141, 507 N.W.2d 591.

Murphy alleges that she and other employees were told in 1995, "We don't fire you, you fire yourself." Defendants argue that since the statement was not in the context of a specific discussion regarding job security, it does not create a contract for just cause employment. *Rowe* at 643, 473 N.W.2d 268. However, plaintiff claims that the statement was made in a summer 1995 staff meeting shortly after another employee had been fired, and that it was uttered in response to her specific question about job security. Thus, viewed in the light most favorable to plaintiff, the statement was clearly "security related," and could reasonably be understood as a promise of just cause employment.

---

**1.** This opinion also decided the companion case *Schippers v. SPX Corp.*

■ Defendants assert that in order to create legitimate expectations, an employee must inquire about job security at the time of hiring, citing *Rood.* However, in *Rood* the timing of the employers' oral statements was not relevant; statements to both plaintiffs failed to create just cause employment because they were not made in response to any inquiry regarding the plaintiffs' job security. *Id.* at 124, 134, 507 N.W.2d 591. There is no indication that the timing of the statement was determinative. Defendants have cited no other case law stating that an oral assurance must be made at the time of hiring.

■ As noted above, courts look at "all relevant circumstances" to determine if a contractual obligation existed. Pre-employment negotiations over job security are clearly powerful circumstantial evidence that a meeting of the minds regarding just cause employment existed. The court in *Rood* and *Rowe* contrasted unsuccessful plaintiffs' claims with the successful claim in *Toussaint,* where there were pre-employment discussions of job security. *Rood* at 124, 507 N.W.2d 591, *Rowe* at 643, 473 N.W.2d 268. However, neither *Toussaint, Rowe,* nor *Rood* specifies that discussion of job security *must* happen at the time of hiring in order to create just cause employment. In fact, *Toussaint* states that "*no pre-employment negotiations need take place* and the parties' minds need not meet on the subject," so long as the employer has established uniform policies calculated to make employees believe they will be fired only for cause. *Toussaint* at 613, 292 N.W.2d 880 (emphasis added). The later cases do not repudiate *Toussaint* on that point.

In addition to the oral assurance, plaintiff asserts that Birchtree's Office Manual contains language sufficient to instill legitimate expectations of just cause employment. The manual states, "All employees are on a 90 day probation, during which time they may be dismissed without cause. After this peri-

od of time, employees are considered regular employees with full benefits based on the type of employment." Defendants maintain that the language simply means that after 90 days employees will be entitled to regular benefits. While that is one reading, certainly a reasonable person could be led to believe that after probation employees will *not* be dismissed without cause. This is a factual dispute appropriate for a jury.

The manual also includes a "grievance procedure" with two steps, the first being for the employees involved to discuss the matter themselves, and the second being to take the grievance to "management" for review. Murphy argues that this creates a legitimate expectation of just cause employment. Defendants argue that because these procedures do not relate to termination, they do not establish just cause employment. In themselves, the grievance procedures would most likely be insufficient, but in conjunction with the other statements described above these procedures may support a finding of just cause employment.

The manual also contains disciplinary provisions regarding punctuality and absence, which may be grounds for dismissal.[2] Defendants argue that this non-inclusive list of disciplinary procedures indicates at will employment. *Rood* states, "A nonexclusive list of common-sense rules of behavior that can lead to *disciplinary action or discharge,* clearly reserves the right of an employer to discharge an employee at will." *Rood* at 142, 507 N.W.2d 591 (emphasis in original), citing *Bauer v. American Freight System, Inc.,* 422 N.W.2d 435, 438 (S.D., 1988). However, *Rood*'s holding that such non-inclusive disciplinary provisions are consistent with at will employment does not mean that such a list precludes just cause employment. That would signify that an employer's promise of just cause employment could be negated by an incomplete set of disciplinary measures, a clearly illogical result.[3]

**2.** More than two latenesses without notice per year "will not be tolerated," and three unexcused absences "will be considered grounds for dismissal."

**3.** A recent ruling from the Michigan Supreme Court is ambiguous on this point. The Court

granted summary judgment for a defendant on plaintiff's legitimate expectations claim because the policy manual on which plaintiff relied included a non-inclusive set of disciplinary measures. *Dolan v. Continental Airlines/Continental Express,* 454 Mich. 373, 563 N.W.2d 23, 30 (1997). The manual stated that discipline

Finally, defendant Fediuk testified that Birchtree had a "policy" of discharge only for good cause "for as long as I can remember," and that the policy continues today. Defendants maintain that because Fediuk never communicated his thoughts on just cause discharge to anyone besides his business partner, his stated belief does not support the wrongful discharge claim. However, Fediuk's admission does tend to support the reasonableness of viewing the statements in the manual and the oral assurance as communicating a just cause policy. It also seems counterintuitive that Birchtree could have had an uncommunicated "policy" of just cause discharge. As discussed in the cases above, an employer benefits from maintaining a "just cause" policy precisely because of the loyalty and satisfaction it instills in employees, *Toussaint* at 613, 292 N.W.2d 880. Indeed, defendants' intentions were not communicated and not binding; it makes little sense for Fediuk to agree that there was a "policy."

Defendants maintain that they fired Murphy because of personality clashes with Fediuk and with other employees. Murphy contends that her only difficulty was with Fediuk, and that one of the employees alleged to have resigned because of her, Jennifer Wurtz, is a friend of hers. The actual motivation for Murphy's firing is not relevant here. Defendants have not asserted the absence of factual dispute regarding the existence of just cause for Murphy's discharge, so this question remains for a jury.

### III. Tortious interference with contractual relations

[16–18] Plaintiff claims that defendant Fediuk tortiously interfered with her contractual relationship with Birchtree. Normally, only a third party to a contractual or business relationship may be sued for tortious interference. *Dzierwa v. Michigan Oil Co.*, 152 Mich.App. 281, 287, 393 N.W.2d 610 (1986). As both parties acknowledge, a corporate agent is not liable for tortious interference with the corporation's contract unless the agent acted purely for personal gain and with no benefit to the corporation. *Reed v. Girl Scout Council*, 201 Mich.App. 10, 13, 506 N.W.2d 231 (1993). Plaintiff concedes that Fediuk was not a third party to the business relationship. But she argues that Fediuk, in discharging her, acted in his own personal interest and with no benefit to the corporation.

Dr. Fediuk admits in his deposition that he personally disliked Murphy. Plaintiff argues that her firing did not benefit Birchtree, since defendants admitted that Murphy's technical skills were excellent. However, since Fediuk was one of only two partners, and interacted with Murphy on a daily basis, it is impossible to separate any personal benefit he derived from the benefit to the partnership. Thus, because Fediuk cannot be shown to have acted purely in his personal interest with no benefit to the partnership, summary judgment for defendants on this issue is appropriate.

### IV. ERISA Breach of Fiduciary Duty

Murphy's third claim is that Fediuk committed a breach of fiduciary duty in the administration of Birchtree's Profit Sharing Plan and Trust. She thus sues under ERISA, 29 U.S.C. § 1104. Her account balance in this plan was $10,040.00 as of December 31, 1992, and a year later it had increased to $10,516.00. Her payout when she was fired in September 1995 was for that same amount, $10,516.00. Thus from December 1992 through September 1995, her account accrued only $476.00. She charges that plan trustees failed to properly invest

---

"should be used only when other efforts have failed or if the violation in question precludes other alternatives," and also that "[t]he supervisor must investigate early and thoroughly to be fair as well as to prepare for possible testimony that just cause existed for disciplinary action." *Id.* at 30. Yet because the policy on involuntary termination expressly excepted "serious infractions," the disciplinary measures were found to be non-inclusive and therefore did not create legitimate expectations of just cause employ-

ment. *Id.* It is not clear whether, absent the non-inclusive disciplinary measures, other assurances in the manual would have been sufficient to create legitimate expectations, though it appears not. In contrast, the policy manual in the instant case contained language *apart* from its discipline provisions (i.e. the probationary clause) which could be found to create such expectations and, unlike the *Dolan* plaintiff, Murphy also has evidence supporting oral assurances of termination only for cause.

the funds so as to recover reasonable investment profits, and seeks lost interest earnings and accounting fees to reconfigure her tax returns.

Defendants have not argued for purposes of summary judgment that the plan was managed with due skill, prudence and diligence as required by 29 U.S.C. § 1104. Rather, they argue that Dr. Martella was and is the only plan trustee, and the only person against whom plaintiff may claim breach of fiduciary duty. ERISA does not authorize suits for money damages against non-fiduciaries. *Mertens v. Hewitt Associates,* 508 U.S. 248, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993).

During hearings on defendants' summary judgment motion, held on May 20, 1997, I granted permission for plaintiff to file a second amended complaint naming Dr. Martella. Leave to amend a complaint "shall be freely given when justice so requires...." Fed. R.Civ.Pr. 15(a). Neither Dr. Martella nor defendants suffer prejudice from this amendment, as Dr. Martella is or should have been aware of the lawsuit against his partnership, including the breach of fiduciary duty claim. Plaintiff's counsel stated on the record that plaintiff would no longer pursue the ERISA breach of fiduciary duty claim against Dr. Fediuk, and so the Second Amended Complaint shall be construed to state this claim only against Dr. Martella and Birchtree, and not against Dr. Fediuk. Therefore, defendants' motion as regards this claim is moot.

### V. *Conclusion*

For the reasons stated above, defendants' motion for summary judgment is hereby granted as regards the claim of tortious interference and denied as regards the claim of wrongful discharge. Defendants' motion is moot as regards the ERISA breach of fiduciary duty claim. Plaintiff's motion for leave to file a second amended complaint is hereby granted.

IT IS SO ORDERED.