STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

10-1017


CARLOS REYES-SILVA

VERSUS

DRILLCHEM DRILLING SOLUTIONS, LLC


**********


APPEAL FROM THE
FIFTEENTH JUDICIAL DISTRICT COURT
PARISH OF LAFAYETTE, NO. 2009-1445-G
HONORABLE DURWOOD WAYNE CONQUE, DISTRICT JUDGE


**********


**ULYSSES GENE THIBODEAUX**
**CHIEF JUDGE**


**********


Court composed of Ulysses Gene Thibodeaux, Chief Judge, John D. Saunders, and Phyllis M. Keaty, Judges.


**REVERSED AND REMANDED.**

**James Isaac Funderburk**
**Funderburk & Herpin**
**P. O. Drawer 1030**
**Abbeville, LA 70511-1030**
**Telephone:  (337) 893-8140**
**COUNSEL FOR:**
        **Defendant/Appellee - Drillchem Drilling Solutions, LLC**

**Carl M. Duhon**
**Ike Huval**
**Duhon Law Firm**
**P. O. Box 52566**
**Lafayette, LA 70505**
**Telephone:  (337) 237-9868**
**COUNSEL FOR:**
        **Plaintiff/Appellant - Carlos Reyes-Silva**

**THIBODEAUX, Chief Judge.**

The plaintiff-appellant, Carlos Reyes-Silva, appeals a summary judgment granted in favor of the defendant-appellee, Drillchem Drilling Solutions, LLC (Drillchem), finding that an "Employment Agreement" (Agreement) entered into by the parties was not a fixed-term contract. We find that, due to issues of law and fact, the defendant is not entitled to summary judgment on the at-will employment status of the plaintiff. We reverse.

I.

## ISSUES

We must decide whether the trial court erred in granting Drillchem's motion for summary judgment and in finding that the Employment Agreement between the parties represented an at-will, rather than fixed-term, contract.

II.

## FACTS AND PROCEDURAL HISTORY

On July 2, 2008, Mr. Reyes-Silva and Drillchem executed a four-page document entitled "Employment Agreement" which stated that Drillchem would pay Mr. Reyes-Silva a salary of $200,000.00 a year, beginning July 15, 2008, plus quarterly sales bonuses, group health benefits, and $1,500.00 per month for the lease of his automobile. The Agreement contained terms and conditions of the employment, including the duties and responsibilities of Mr. Reyes-Silva's new position as "Director of Business Development." The position was a sales position, and Mr. Reyes-Silva's primary responsibilities were to develop new customers to expand Drillchem's customer base and to aggressively market and sell Drillchem proprietary products, both domestically and internationally. The Agreement

contained two paragraphs regarding termination, which provide the basis for the present appeal. Those paragraphs, eleven (11) and twelve (12), state:

> 11. Termination of Agreement by the Company; After six (6) months from the initial employment date, without cause, the Company may terminate this agreement at any time upon providing thirty (30) days written notice to the Employee. If the Company requests, the Employee will continue to perform his/her duties and may be paid his/her regular salary up to the date of termination. In addition, the Company will pay the Employee on the date of the termination a severance allowance of $10,000 (pre-tax). The Company may, at any time, with cause ("cause" may include dereliction of duty, committing a criminal act, alcohol or drug abuse, etc.), terminate this agreement. Notwithstanding anything to the contrary contained in this agreement, the Company may terminate the Employee's employment upon thirty (30) days' notice to the Employee should any of the following events occur; a) The Company's decision to terminate its business and liquidate its assets, b) Bankruptcy or Chapter 11 reorganization.

> 12. Termination of Agreement by the Employee: After six (6) months from the initial employment date, without cause, the Employee may resign from employment with the Company upon providing thirty (30) [days'] written notice to the Company. Employee may be required to perform his or her duties and will be paid the regular salary to date of resignation but shall not receive severance allowance.

The effective date of the Agreement was July 7, 2008.

On October 17, 2008, Drillchem sent a letter to Mr. Reyes-Silva informing him that he was being terminated effective November 16, 2008 because he had not fulfilled his contractual obligations, pre-defined sales quotas, and pre-employment promises regarding the work that he would deliver. The letter stated that Mr. Reyes-Silva's sales profits were not close to offsetting the cost of his salary and benefits. Mr. Reyes-Silva stated in his affidavit that, a few days later, he was told at a meeting to ignore the October 17th letter and that he was not terminated.

2

On December 1, 2008, Drillchem prepared two alternative termination letters. The first letter terminated Mr. Reyes-Silva immediately, due to lack of sales performance, and it referenced no sales whatsoever in the prior month of November. The letter indicated that Mr. Reyes-Silva could express his opinions at the exit interview that afternoon. It also offered him a two-week severance package in exchange for signing a general release. Mr. Reyes-Silva did not sign the release. The alternative termination letter, also dated December 1, 2008, stated that Mr. Reyes-Silva was terminated effective December 31, 2008 for under-performance in sales and no sales in November. It did not offer him a severance package, and it demoted him to the position of warehouseman.

On December 3, 2008, Drillchem sent another termination letter effective January 6, 2009, which, as it stated, coincided with the end of his sixth month of employment. This letter referenced paragraph eleven of the Agreement and indicated compliance with the thirty-day written notice requirement. It further indicated that Mr. Reyes-Silva would receive his regular pay check through January 6, 2009, and that his final check would include the $10,000.00 severance allowance referenced in paragraph eleven of the Agreement.

On December 5, 2008, Drillchem sent another letter, effectively terminating Mr. Reyes-Silva as of December 6, 2008. This letter stated that it superceded and nullified any termination offers previously transmitted, and it stated that Mr. Reyes-Silva was being "terminated with cause." It specified three enumerated causes: (1) failure to deliver on pre-employment sales projection promises; (2) failure to meet or come close to meeting pre-defined sales quotas in any month of employment, with total sales for July through December of $51,035.00, only 6.2% of the $833,335.00 pre-defined sales quota; and, (3) failure to follow the

directives of his supervisor. The letter indicated that Mr. Reyes-Silva would receive a final paycheck and a final expense check through December 6, 2008.

Mr. Reyes-Silva's last paycheck, dated December 9, 2008, shows that Mr. Reyes-Silva received $83,333.31 in salary from Drillchem, which is $16,666.66 per month, for his five (5) months of employment, and that his final check was at the same rate of pay as previous checks.

On February 4, 2009, counsel for Mr. Reyes-Silva sent a demand letter to Drillchem, referencing paragraph eleven (11) and asserting that Drillchem had breached the Agreement by terminating Mr. Reyes-Silva before his sixth month of employment. It stated that Mr. Reyes-Silva was owed $100,000.00 for six (6) months of employment, that he was paid only $83,333.31, and that he was, therefore, owed $16,666.66 for the sixth month that he did not work due to the termination. The letter further asserted that Mr. Reyes-Silva was not given a thirty-day notice at the end of the six-month period, amounting to an alleged seventh month of income due under the Agreement, and that he was, therefore, owed another $16,666.66 for the thirty-day notice period. The demand letter thus asserted that Mr. Reyes-Silva was owed $33,333.35 in salary under the Agreement. It further alleged that, because the notice requirement was violated, the monthly salary of $16,666.66 continued to accrue monthly.

The February 4, 2009 demand letter then addressed paragraph three (3) of the Employment Agreement, which relates to the "Performance Bonus" section of the Agreement. Paragraph three (3) states as follows:

> 3. Performance Bonus: The Company shall pay a quarterly bonus to the Employee equal to 10% of the Net Sales (Sales minus Sales Returns) of the Company's "Proprietary Product Line" exceeding $500,000 in any calendar quarter. The performance bonus will be paid on the 15th of the month following the end of each calendar quarter year.

4

Asserting that Mr. Reyes-Silva was informed that Drillchem had $3,000,000.00 in net sales for the third quarter of 2008, the letter applies the math of the above paragraph ($3,000,000.00 – $500,000.00 = $2,500,000.00 x 10% = $250,000.00) and makes demand for $250,000.00 as an unpaid performance bonus for Mr. Reyes-Silva for the third quarter of 2008. For the fourth quarter of 2008, Mr. Reyes-Silva estimated $4,000,000.00 in net sales, and the letter demanded a performance bonus of $350,000.00 for that quarter ($4,000,000.00 – $500,000.00 = $3,500,000.00 x 10% = $350,000.00).

Mr. Reyes-Silva's attorney concluded the demand letter with an offer to settle the claims against Drillchem for $633,333.35 ($600,000.00 in unpaid performance bonuses + $33,333.35 in unpaid salary), payable within ten days from the date of the letter.

Because the demand was not met, Mr. Reyes-Silva filed suit against Drillchem. The petition sought all amounts previously demanded, reiterating the monthly accrual of $16,666.66, and it sought ninety (90) days of "penalty wages," plus attorney fees pursuant to La.R.S. 23:631 and La.R.S. 23:632. The petition further sought damages for mental anguish, damage to reputation, and other damages to be established at trial. The supplemental petition of Mr. Reyes-Silva sought an additional $10,000.00 for the severance allowance referenced in paragraph eleven (11) of the Agreement.

Drillchem filed a motion for summary judgment, asserting that the Agreement at issue merely established Mr. Reyes-Silva's salary, as a salesman for Drillchem, at $200,000.00 per year, payable on the 15th and the last day of each month. Drillchem asserted that the Agreement did not include a fixed term of employment, nor a fixed date of termination. Drillchem argued that without a fixed term of employment, Mr. Reyes-Silva was an "at-will" employee, pursuant to

5

La.Civ.Code art. 2747, who was subject to termination at any time, with or without cause, just as he was free to leave at any time, with or without providing cause.

The trial court granted Drillchem's motion for summary judgment, finding that the Agreement was not a fixed-term contract and that Mr. Reyes-Silva was an at will employee of Drillchem. Mr. Reyes-Silva filed this appeal.

III.

**STANDARD OF REVIEW**

Appellate courts review summary judgments de novo under the same criteria that govern the district court's consideration of whether summary judgment is appropriate. *Schroeder v. Board of Supervisors of La. State Univ.*, 591 So.2d 342, 345 (La.1991).

IV.

**LAW AND DISCUSSION**

Mr. Reyes-Silva contends that the trial court erred in granting summary judgment in favor of Drillchem, in finding that the employment relationship of the parties was at will, and in finding that the Agreement between the parties did not contain a fixed-term for employment. He argues that paragraphs eleven (11) and twelve (12) of the Agreement created a fixed term or limited duration contract, and that Drillchem's motion for summary judgment should have been denied. He further asserts that if there was ambiguity in the contract, then there were questions of material fact which precluded summary judgment.

The trial court found ambiguity in the contract, regarding the requirement of "cause" for termination during the first six months of employment, and it told the parties to prepare that issue for trial. However, at the same time, the trial court found no fixed term in the Agreement and granted summary judgment to

Drillchem on the issue of at will employment. As fully explained below, if the employment was truly at will, then there would be no need for a trial on cause. Therefore, we must reverse.

The Louisiana Civil Code provides for employment which is terminable at will under La.Civ.Code art. 2747, and it provides for employment of limited duration, or fixed-term employment under La.Civ.Code art. 2749. Those articles state as follows:

> Art. 2747. Contract of servant terminable at will of parties
>
> A man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for so doing. The servant is also free to depart without assigning any cause.
>
> Art. 2749. Liability for dismissal of laborer without cause
>
> If, without any serious ground of complaint, a man should send away a laborer whose services he has hired for a certain time, before that time has expired, he shall be bound to pay to such laborer the whole of the salaries which he would have been entitled to receive, had the full term of his services arrived.

Accordingly, under the at will employment of La.Civ.Code art. 2747, an employer is generally at liberty to dismiss an employee at any time, for any reason, without incurring liability for the discharge. *Quebedeaux v. Dow Chem. Co.*, 01-2297 (La. 6/21/02), 820 So.2d 542. Unless the employment contract is for a definite period of time, there is no enforceable action for damages under Louisiana law, as the contract can be terminated at the will of either employee or employer. *Deus v. Allstate Ins. Co.*, 15 F.3d 506 (5th Cir.), *cert. denied*, 513 U.S. 1014, 115 S.Ct. 573 (1994).

Under the fixed term employment of La.Civ.Code art. 2749, however, when the parties enter into a contract of employment for a definite term, an employer must show *good* or *just cause* for terminating the employee during that term. *See*

7

*Griffith v. Sollay Found. Drilling, Inc.*, 373 So.2d 979 (La.App. 3 Cir. 1979); *Bartlett v. Doctors Hosp. of Tioga*, (La.App. 3 Cir. 1982), 422 So.2d 660, *writ denied*, 427 So.2d 869 (La.1983); *Wiley v. Mo. Pacific R.R. Co.*, 430 So.2d 1016 (La.App. 3 Cir. 1982), *writ denied,* 431 So.2d 1055 (La.1983).

An employer's discharge, *without cause*, of an employee hired under a fixed term contract results in the employee's entitlement to compensation for all wages or salary that he would have received but for the breach. *Coates v. Hill Wholesale Distrib. Co.*, 42,584 (La.App. 2 Cir. 10/24/07), 968 So.2d 315, *writ denied*, 08-13 (La. 3/24/08), 977 So.2d 953. Because there is a presumption that employment is at will, the party relying on an alleged contract of employment for a fixed term has the burden of proving that there was a meeting of the minds on the length of time of employment. *See Brodhead v. Bd. of Trustees for State Colleges and Univs.*, 588 So.2d 748 (La.App. 1 Cir. 1991), *writ denied*, 590 So.2d 597 (La.1992).

In the present case, we find that paragraphs eleven (11) and twelve (12) of the Agreement attempted to bind the parties and to create obligations that would not exist in the at will employment governed by La.Civ.Code art. 2747. Paragraph twelve (12) required that Mr. Reyes-Silva provide a thirty-day written notice if he resigned *without cause, after six months* of employment. We summarize paragraph eleven (11) as providing for three actions by Drillchem:

> 1) Drillchem can terminate the Agreement *with cause* at any time;
>
> 2) Drillchem can terminate the Agreement *without cause after six months* by providing a thirty-day written notice to the employee; this includes $10,000.00 severance allowance.
>
> 3) Drillchem can terminate employment upon a thirty-day notice if it decides to end business and liquidate its assets or file bankruptcy proceedings.

8

In our analysis, the Agreement provides for termination without cause only after the initial six-month period ended. At any other time before the initial six month period ended, cause was required. Therefore, the Agreement established a fixed period of six months during which Mr. Reyes-Silva could only be terminated for cause. While the Agreement does not guarantee employment for a fixed term, it does require just cause for termination during the first six months, which comports more closely with La.Civ.Code art. 2749 as fixed term employment than with the at will employment of La.Civ.Code art. 2747. In addition to the language of the Agreement, Mr. Reyes-Silva's affidavit evidences his belief that, through discussions with Mr. William Kortlang, President and COO of Drillchem, at the time of signing the Agreement, he could not be terminated during the first six months of employment except for good cause.

Whether Drillchem terminated Mr. Reyes-Silva for *good* or *just* cause is a matter for trial. It is clear that the parties anticipated trial, as neither presented documentation regarding the sales receipts of either Drillchem or the sales made by Mr. Reyes-Silva. All of Drillchem's letters attempting to terminate Mr. Reyes-Silva referenced under-performance and poor sales profits as the cause for termination. The final letter on December 5, 2008, specifically referenced pre-employment sales projection promises, pre-defined sales quotas of $833,335.00 with only $51,035.00 in actual sales, and Mr. Reyes-Silva's failure to follow directives. In Mr. Reyes-Silva's affidavit, he denies that there were any sales projection promises or pre-defined sales quotas, and he denies that he failed to follow directives. Accordingly, the contrary assertions by Drillchem and Mr. Reyes-Silva raise material issues of fact regarding the existence of good cause, which is to be determined through evidence at trial.

As a preliminary matter, however, we note that some of Mr. Reyes-Silva's assertions call for an overly broad interpretation of the Agreement that is unsupported in the document itself. Accordingly, we make the following findings for remand: Under paragraph eleven (11) of the Agreement itself, (1) good cause *may* include, but is not limited to, dereliction of duty, crime, or substance abuse, as these were examples only, as evidenced by the use of the permissive "may" and the inclusion of unspecified additional causes indicated by "etc."; (2) a thirty-day notice is not required for termination during the first six months of employment unless the reason is Drillchem's liquidation or bankruptcy, and the Agreement does not require that this particular notice be written; and, (3) a severance allowance is not required for termination during the first six months of employment.

V.

**CONCLUSION**

Based upon the foregoing, we reverse the trial court's finding of at-will employment, and we reverse the summary judgment granted to Drillchem on that issue. We find that the Agreement between the parties contained a fixed term of six months during which Mr. Reyes-Silva could only be terminated for good or just cause. We further find issues of material fact regarding whether the termination by Drillchem was for good and just cause, and we remand the case to the trial court for a trial on the merits consistent with the findings expressed in this opinion.

Costs of appeal are assessed against Drillchem Drilling Solutions, LLC.

**REVERSED AND REMANDED.**