*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 12a0247p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

LYNN BRANHAM,

                *Plaintiff-Appellant,*

        *v.*

THOMAS M. COOLEY LAW SCHOOL; DONALD
LEDUC,

                *Defendants-Appellees.*

No. 10-2305

Appeal from the United States District Court
for the Western District of Michigan at Grand Rapids.
No. 1:07-cv-630—Robert J. Jonker, District Judge.

Argued: April 18, 2012

Decided and Filed: August 6, 2012

Before: MARTIN, COOK, and KETHLEDGE, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Peter Goldberger, Ardmore, Pennsylvania, for Appellant. Megan P. Norris, MILLER CANFIELD, PADDOCK AND STONE, PLC, Detroit, Michigan, for Appellees. **ON BRIEF:** Peter Goldberger, Ardmore, Pennsylvania, Julie H. Hurwitz, William H. Goodman, GOODMAN & HURWITZ, P.C., Detroit, Michigan, for Appellant. Megan P. Norris, Christopher M. Trebilcock, MILLER CANFIELD, PADDOCK AND STONE, PLC, Detroit, Michigan, for Appellees.

———————————

## OPINION

———————————

    BOYCE F. MARTIN, JR., Circuit Judge. Lynn Branham, a former law professor at the Thomas M. Cooley Law School, appeals the district court's judgments concluding that the tenure granted under her contract does not afford her rights beyond those specified in her employment contract; concluding that the faculty conference process

1

through which her termination was ratified complied with Cooley's policy and with Michigan law; denying her a jury trial on the issues of whether there was "good cause" for her termination and whether she is due damages; and limiting her available remedy to equity.  For the reasons that follow, we AFFIRM the judgments of the district court.

I.

Branham was a tenured law professor at Cooley at the time of her termination. She began teaching there in 1983, and primarily taught courses in criminal law.  She suffered from seizures on occasion.  She signed an employment contract dated December 21, 2005, for a twelve-month employment period beginning January 1, 2006.  For the spring semester of 2006, Branham was assigned to teach classes in constitutional law and torts.  Branham told Cooley Dean Donald LeDuc that she did not want to teach either class, citing health reasons and her preference for, and greater experience with, teaching criminal law-related courses.  Despite her complaint to LeDuc, she taught the courses she was assigned through the spring semester of 2006.  During the summer of 2006, Branham sold her house in Michigan, moved to Champaign, Illinois, and requested and was granted a leave of absence from Cooley.  Though she was assigned to teach constitutional law after her return from leave, she refused to do so, instead asking to be assigned a criminal law class.

LeDuc dismissed Branham from her position in December 2006.  Her employment contract required a process by which his decision to dismiss Branham would be voted upon by the Cooley faculty.  That process was not initially followed—the Cooley faculty did not vote on her dismissal.

Branham filed suit, seeking damages for alleged violations of the Americans with Disabilities Act and the Michigan Persons with Disabilities Civil Rights Act, intentional infliction of emotional distress, and breach of contract.  On cross motions for summary judgment, the district court granted summary judgment against Branham on the first three claims, but not on the contract-breach claim.  The district court also denied Branham's motion for partial summary judgment on the contract-breach claim.  After the district court ruled on the summary judgment motions, Cooley filed a motion in

limine to limit the remedy available on the contract-breach claim to equitable relief.  The district court granted this motion and subsequently requested briefing on whether either party had a right to a jury trial.  In response to the request for briefing, Branham waived a jury trial.  After a four-day bench trial, the district court held that Cooley had breached the employment contract by not following the dismissal process required by the contract, and ordered Cooley to comply with that process.

To comply with the district court's order, Cooley held a faculty conference to consider whether good cause existed to dismiss Branham from her position.  The faculty concurred with LeDuc's decision to dismiss Branham, and the Board of Directors unanimously upheld the faculty's decision.  The district court then ruled that Cooley had complied with the process due Branham under her contract and that the process complied with Michigan law.  The district court entered final judgment against Branham. Branham appeals.

## II.

"On an appeal from a judgment entered after a bench trial, we review the district court's findings of fact for clear error and its conclusions of law *de novo*."  *Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488, 492 (6th Cir. 2005).  We review a district court's ruling on a motion in limine for an abuse of discretion. *United States v. Talley*, 194 F.3d 758, 765 (6th Cir. 1999).

## III.

Branham argues the district court erred in (1) concluding that the tenure granted under her contract does not afford her rights beyond those specified in her employment contract; (2) concluding that the faculty conference process complied with Cooley's policy, American Bar Association standards, and Michigan and federal law; (3) denying her a jury trial on the issues of whether there was "good cause" for her termination and whether she is due damages; and (4) limiting her available remedy to equity.

## A. Tenure

As the district court noted, and as Branham concedes, "'tenure' [does not] mean[] anything other than what [Branham's] employment contract provides." Further, under Michigan law, "contracts for permanent employment are for an indefinite period of time and are presumptively construed to provide employment at will." *Rowe v. Montgomery Ward & Co.*, 473 N.W.2d 268, 271 (Mich. 1991). The term "tenure" is not defined in Branham's employment contract, but Branham contends that "tenure" means "lifetime appointment" or "continuous employment." Branham points to Cooley's Policy 201, discussed below, which is expressly incorporated in her employment contract, and to the American Bar Association's Appendix 1 to its Standards and Rules of Procedure for Approval of Law Schools, to support her assertion that, under her contract, tenure means a lifetime appointment or a guarantee of continuous employment. Branham argues that the district court erred in not incorporating the American Bar Association's suggested tenure policies into the 2006 employment contract.

The contract expressly incorporates "[t]he current provisions of the American Bar Association Standards governing approval of law schools as they relate to maximum teaching loads and other rights, duties and prerogatives of faculty members." Appendix 1 to the American Bar Association's Standards, titled Statements on Academic Freedom and Tenure, states that "teachers . . . should have permanent or continuous tenure, and their services should be terminated only for adequate cause." American Bar Association Standard 405, titled "Professional Environment," states that a law school "shall" have a policy regarding tenure, and notes that Appendix 1 "is an example [of a tenure policy] but is not obligatory." This provision alone is enough for us to conclude that the Standards' tenure policy in Appendix 1 is merely a tenure model, and is not necessarily the "tenure" Branham held. Even if we were to hold that Appendix 1 is incorporated into Branham's contract, we find that the tenure held by Branham does not afford her rights beyond those enumerated in her contract. The language in Appendix 1 *suggests*, but does not *require*, that law schools grant permanent or continuous tenure: "teachers . . . *should* have permanent or continuous tenure." (emphasis added). The

language in the contract does not grant permanent or continuous tenure; rather, it merely provides for a one-year period of employment.

Branham's contract, including Policy 201, which refers to the concept of tenure but does not go so far as to define tenure as a right to continuous employment, does not create an obligation of continuous employment: her contract expressly limits its term to a single year. While Branham may have had "tenure" in the sense that she had academic freedom, and that she and Cooley generally expected that they would enter a new employment contract in subsequent years, nothing in her employment contract, or the documents incorporated by reference therein, provides for a term of employment greater than one year. The district court did not err in concluding that Branham is due only the employment protection and process specified in her contract.

## B. Faculty Conference Process

After ruling that Cooley breached its employment agreement with Branham when LeDuc dismissed her without the faculty review process required by her contract, the district court ordered Cooley to hold a faculty conference to provide Branham with the dismissal process specified by Policy 201. Branham contends on appeal that the faculty conference process that Cooley held to comply with the district court's order did not comply with her rights under her employment contract, with her rights under the American Bar Association's Standards, or with federal and Michigan law.

### 1.        Compliance with Process

Branham's employment contract incorporates Cooley's Policy 201. Policy 201 provides that:

> No tenured faculty member shall be dismissed . . . prior to the expiration of the term of his appointment, except for good cause shown and in accordance with the following procedure:
>
> > (a) Notice in writing by the dean of the reasons and grounds for dismissal shall be served on the faculty member at least fourteen days prior to a meeting of the faculty conference at which the

> removal is to be considered, as provided in subparagraph (b) herein.
>
> (b) The Dean shall thereafter cause a meeting of the faculty conference to be convened for the purpose of considering removal of the faculty member.
>
> (c) If the faculty conference shall concur in removal, the faculty member shall be removed, subject to appeal to the academic committee of the Board of Directors.

After the district court ordered Cooley to convene a faculty conference, LeDuc notified Branham in writing of the reasons and grounds for her dismissal, called the faculty conference, and presented the faculty with his reasons for her dismissal. The faculty members present at the conference voted 85-19 to concur in LeDuc's dismissal of Branham. Upon appeal to the Board of Directors, the Board upheld the faculty conference's decision in a unanimous vote. Based on these facts, we find that the faculty conference process complied with all of Policy 201's enumerated requirements.

Branham submits that the court-ordered process could never have been adequate because it occurred long after LeDuc had removed her from her position. For the reasons discussed immediately above, the court-ordered faculty conference did comply with Policy 201, and she fails to explain how a dismissal this is compliant with Policy 201 is "inadequate."

Finally, Branham asserts that certain circumstances of the faculty conference, such as votes by proxy and by faculty members who were not faculty members at the time of her dismissal, should render the entire process void. Branham fails to explain how any of these facts violate the requirements of the process set forth in Policy 201 or even whether they changed the outcome of the faculty conference. For these reasons, we find that Cooley complied with the procedures specified in Policy 201.

### 2.     Sufficiency of Process

Branham contends that Policy 201 is not sufficiently "fair" under Michigan law; we find that Policy 201 complies with Michigan law.  Under Michigan law, "[a]n employer can provide a procedure for resolution of disputes concerning the discharge of employees." *Carlson v. Hutzel Corp. of Mich.*, 455 N.W.2d 335, 339 (Mich. Ct. App. 1990).  The Michigan Supreme Court recognized, in *Renny v. Port Huron Hospital*, 398 N.W.2d 327, 338 (Mich. 1986), that there is a certain amount of "elementary fairness" due an employee in an employment termination context.  *Renny* identifies five elements essential to "elementary fairness": (1) notice; (2) the right and opportunity to present evidence and arguments, and to rebut the opposition's evidence and arguments; (3) a formulation of issues of law and fact; (4) a rule of finality; and (5) other procedural elements as may be necessary, determined by the particulars of the case, including the "complexity of the matter in question, the urgency with which the matter must be resolved and the opportunity of the parties to obtain evidence and formulate legal contentions." *Id.*  Cooley's Policy 201, and the faculty conference held pursuant to its provisions, do not run afoul of the requirements in *Renny*: Branham received notice of the hearing; she had an opportunity to present evidence (indeed, she was given extra time to speak); the issue before the conference—whether the faculty concurred in Branham's dismissal—was clear; and Policy 201 explicitly states the binding nature of the Board's decision to uphold the result of the conference.  As to the fifth element, as the district court stated, "the key facts of [Branham's] assigned class load, the validity of that load under her contract, and her refusal to teach the assigned classes were beyond genuine dispute."  The particulars of this case, where the facts were clear and straightforward, where Branham requested and was granted additional time to speak and permission to distribute voluminous materials to the conference, and where over a dozen faculty members spoke at the conference, cause us to conclude that the fifth element of fairness was met by the faculty conference process.

On appeal, Branham also argues that she is due federal due process rights that she was not afforded during the faculty conference, contending that she should have been allowed to call witnesses and offer additional evidence.  She contends these rights

spring from general constitutional principles and from Interpretation 405-4 in the American Bar Association's Standards, which states that "principles of fairness and due process" are required during tenure termination proceedings. She relies on *Mitchell v. Frankhauser*, 375 F.3d 477 (6th Cir. 2004), and *Carter v. Western Reserve Psychiatric Habilitation Center*, 767 F.2d 270 (6th Cir. 1985), for these arguments. Both *Mitchell* and *Carter* discuss what process is due to an employee whose contract specifies that termination must be for cause, and both involve the termination, for cause, of *public* employees. *See also Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 546 (1985) (establishing the due process rights for "tenured public employee[s]" that are discussed in *Mitchell* and *Carter*). Branham was employed by a *private* law school. The distinction is important. "Procedural due process guarantees apply only in the presence of a 'property' or 'liberty' interest within the meaning of the Fifth or Fourteenth Amendment." *Garner v. Michigan State Univ.*, 462 N.W.2d 832, 836 (Mich. Ct. App. 1990). As we have discussed, Branham's employment contract provided for a finite term of employment with a private employer. "Any right to continued employment enjoyed by an employee of a private employer arises out of the employment contract. Such contractual rights do not rise to the level of a protected property interest." *Id.* Thus, Branham, a private employee, is not due any of the additional federal due process rights discussed in *Mitchell* and *Carter*.

For these reasons, Branham's arguments concerning Cooley's compliance with the contractual termination process, and the sufficiency and fairness under law of that process, do not succeed.

## C. Remedy

Branham argues she is due economic damages for at least the period between her dismissal and the faculty concurrence in that dismissal three years later. The district court ruled that the only available remedy for Cooley's contract breach was an equitable remedy. We review that decision for an abuse of discretion. *Talley*, 194 F.3d at 765. As we have discussed, Branham's contract was for a one-year term of employment. The contract also provided for a process governing the method by which she could be

terminated prior to the end of this one-year term. LeDuc's dismissal of Branham did not comply with that process, and thus breached the employment contract. The district court determined that Branham was due a remedy for this breach. As a remedy for the harm caused by the breach, the district court ordered Cooley to comply with the process provided by Branham's employment contract. The aim of a contractual remedy is to put the harmed party in the position in which she would have been absent the breach. *Corl v. Huron Casings, Inc.*, 544 N.W.2d 278, 280 (Mich. 1996). Here, the way to put Branham in the position she would have been absent the breach was to provide Branham with the faculty conference process; the district court ordered Cooley to provide the process, and Cooley did. Had Branham prevailed at the faculty conference, it is certainly possible that she could have subsequently recovered damages. But, because the faculty found there was cause for dismissing Branham and concurred in LeDuc's dismissal of her, there remains no basis, under her contract, for a claim for damages.

The district court did not abuse its discretion in limiting the available remedy to an equitable one.

### D. Right to Jury Trial

Branham argues that the district court deprived her of her Seventh Amendment right to a jury trial on the questions of good cause and damages. The right to a jury trial may be waived. Fed. R. Civ. P. 38(d). In response to the district court's request for briefing on Branham's right to a jury trial after it limited the available remedy to an equitable one, Branham filed a "Jury Waiver" that stated she waived "trial by jury only with respect to the trial herein scheduled for September 1, 2009." As noted, a bench trial was conducted beginning on September 1. At this bench trial, the district court determined that Cooley had breached the employment contract and the district court ordered Cooley to provide Branham the faculty conference process required by Policy 201.

Branham argues that her right to a jury trial on the question of good cause—a question she alleges is outside the context of the September 1 trial—was not waived because the "Jury Waiver" expressly limited the scope of the waiver to issues covered

at that trial. Under Michigan law, "[w]here an employer has agreed to discharge an employee for just cause only, its decision to terminate the employee is subject to judicial review . . . . [but,] [b]y establishing an internal grievance procedure an employer may avoid judicial review." *Renny*, 398 N.W.2d at 335. Here, as the district court correctly concluded, Cooley and Branham agreed to an internal grievance procedure in her employment contract. Where an internal grievance procedure such as Cooley's is in place, and where it is followed, this Court does not have "the authority to second-guess [Cooley's] determination [of good cause]." *Thomas v. John Deere Corp.*, 517 N.W.2d 265, 267 (Mich. Ct. App. 1994).

Had Branham prevailed at the faculty conference, she might have been due damages, and, as she argues, she has not waived her right to a jury trial on the issue of damages. But that is not what happened. She consented to a bench trial in which the district court determined that Cooley had breached her employment contract. She was granted a remedy by the district court for this breach. She received the remedy from Cooley, in the form of a hearing and a faculty conference vote on her dismissal, as prescribed by her contract. The faculty conference concurred in her dismissal; the Board of Directors upheld this decision. As discussed above, Cooley's termination process complies with Michigan and federal law, and Cooley followed the prescribed process. Because we conclude that the process by which she was removed was lawful, the decision to dismiss Branham is final and binding. *Renny*, 398 N.W.2d at 338. She is left without a claim for damages under her contract; thus, she is not due a jury trial on damages.

Branham waived her right to a jury trial; at the bench trial she received the right to a remedy, and Cooley provided that remedy. The binding result of that remedy left Branham with no remaining claim, and thus no claim for which she might have a right to a jury trial. With respect to the bench trial for which she waived her right to a jury trial, we hold that Branham's Seventh Amendment rights were not violated.

IV.

Branham's tenure does not provide additional privileges or protections other than those specified in her employment contract.  The process by which the faculty conference reviewed and concurred in LeDuc's dismissal of Branham was sufficient to comply with Branham's employment contract and federal and Michigan law.  The district court did not abuse its discretion in ruling that the remedy available to Branham was limited to equitable relief.  Branham's Seventh Amendment right to a jury trial was not violated.  For these reasons, we AFFIRM the judgments of the district court.