NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0542n.06

Case No. 19-5059

**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

FILED
Oct 24, 2019
DEBORAH S. HUNT, Clerk

| | | |
|---|---|---|
| ROGER PORTER, | ) | |
| | ) | |
| Plaintiff-Appellant, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| v. | ) | STATES DISTRICT COURT FOR |
| | ) | THE WESTERN DISTRICT OF |
| AAR AIRCRAFT SERVICES, INC., a/k/a | ) | TENNESSEE |
| AAR; AAR CORPORATION, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |

BEFORE: BATCHELDER, DONALD, and READLER, Circuit Judges.

**BERNICE BOUIE DONALD, Circuit Judge.** This case presents a dispute over whether, under Louisiana law, the language of a conditional employment contract rendered it an offer of at-will or fixed-term employment. The district court held that the contract contemplated at-will employment. Consequently, the district court excluded all evidence beyond the contract's terms regarding the valuation of salary, stocks, bonuses, and employee benefits guaranteed in the contract, reasoning that the speculative nature of those valuations and the uncertainty of how long Defendant-Appellees AAR Aircraft Services, Inc. and AAR CORP. (collectively, "AAR") would have employed Plaintiff-Appellant Roger Porter ("Porter") were too prejudicial to justify their admission into evidence. Porter appeals the district court's classification of the contract as an at-will employment contract, contending that the existence of contract provisions that promise Porter

an award of particular benefits and protections for the first five years of his employment and limit AAR's ability to terminate Porter without cause establish that the contract contemplated a fixed-term of five years of employment. Conversely, AAR asserts that the contract constituted an offer of at-will employment, arguing that an interpretation of the contract as an offer for a fixed term of employment would render certain provisions of the contract surplusage. For the reasons that follow, we **AFFIRM**.

### I.

Roger Porter, a Shelby County, Tennessee resident, owned and operated Aeroframe, LLC ("Aeroframe"), an aircraft maintenance repair and overhaul business. Aeroframe, a Louisiana corporation, operated in leased hangar facilities at the Chennault International Airport Authority ("CIAA") in Lake Charles, Louisiana. AAR provides aviation-related services to the commercial aerospace and defense industries. In 2013, Porter and AAR began discussing the possibility of AAR's acquiring Aeroframe and taking over its lease with the CIAA. At the same time, Porter was engaged in negotiations to sell Aeroframe and begin working for AAR's competitor, Aviation Technical Services ("ATS").

On July 19, 2013, AAR sent a letter to Porter regarding the potential purchase of Aeroframe. In this proposal letter, AAR submitted its "non-binding offer" to acquire Aeroframe's assets for the purchase price of $3.39 million dollars. Additionally, the proposal letter outlined that, upon closing of AAR's purchase of Aeroframe, Porter would begin working for AAR as the "General Manager/Vice President of AAR Aircraft Services—Lake Charles." In relevant part, this employment proposal offered Porter an annual base salary of $250,000; a severance package promising Porter payment if he was terminated without cause within the first five years of his employment; annual stock options in AAR; employee benefits, including four weeks of vacation

allotment; eligibility to participate in AAR's discretionary incentive bonus plan; and an annual post-closing payout that would steadily increase for the first five years of Porter's employment. The proposal letter concluded with a statement that the purchase proposal and employment offer "constitute a preliminary non-binding offer" that created "no legal obligation . . . unless and until a definitive purchase agreement has been executed by the parties."

Subsequently, negotiations regarding AAR's potential merger and acquisition of Aeroframe fell through, but the parties continued to discuss the possibility of a conditional offer of employment. On August 1, 2013, AAR sent Porter a letter regarding its interest in securing Aeroframe's lease with the CIAA and hiring Porter to work at AAR. AAR characterized this letter as a "conditional offer of employment with AAR Aircraft Services, Inc." In the first paragraph of the offer, AAR explained that "[t]his offer of employment is subject to and contingent upon AAR signing a real estate lease agreement for hangar space with the Chennault International Airport Authority, Lake Charles, LA." The remainder of the letter outlined the terms of Porter's employment offer. Similar to the July 19, 2013 letter, the August 1 letter offered Porter an annual base salary of $250,000; a severance package promising Porter payment if he was terminated without cause during the first five years of his employment; employee benefits, including four weeks of vacation allotment; and eligibility to participate in AAR's discretionary incentive bonus plan. This offer, however, specified that Porter's stock options would be available "on an annual basis for a period of five years," and did not include provisions regarding an annual post-closing payout over the course of a five-year period. The same day he received the letter—August 1, 2013—Porter signed his name under the heading "ACCEPTED & AGREED" and returned it to AAR.

Three days after signing the conditional offer of employment with AAR, Porter voluntarily terminated Aeroframe's lease with the CIAA, represented to the CIAA that he would soon be employed with AAR, and recommended that the CIAA award the lease to AAR over its competitor, ATS. On August 4, 2013, the CIAA awarded the lease to AAR.

From September 2013 to December 2013, Porter and AAR regularly exchanged correspondence regarding Porter's employment. In January 2014, however, AAR stopped responding to Porter's requests for information regarding his start date. On June 12, 2014, Porter's attorney sent a letter on his behalf to AAR stating that Porter was "ready, willing, and able to work" and prepared to sign the necessary documentation solidifying his position with AAR. AAR never responded to the letter.

On October 28, 2015, Porter filed an action in the Chancery Court of Shelby County, which AAR removed to the United States District Court for the Western District of Tennessee pursuant to 28 U.S.C. §§ 1332 and 1441. In December 2016, both parties filed motions for summary judgment, with competing views as to whether an enforceable contract existed and, if it did, whether that contract constituted an offer for at-will or fixed-term employment.

On October 23, 2017, the district court denied both motions for summary judgment. In its order, the district court held that the terms of the conditional offer of employment were ambiguous, thereby creating a genuine dispute of a material fact regarding whether the parties intended to form a contract at all. The district court also determined that whether the employment offer was an offer for a fixed term of employment for five years or an offer for at-will employment presented a genuine dispute of a material fact. Finally, due to these disputed material facts, the district court held that summary judgment was inappropriate as to whether AAR breached the contract or whether the doctrine of unclean hands barred Porter's claim.

Nearly a year later, the district court entered an order partially withdrawing its denial of summary judgment *sua sponte*, finding that the parties had entered into a valid, conditional employment contract. Further, the district court held that Porter's termination of his lease with the CIAA and assistance with AAR's acquisition of the lease triggered AAR's performance under the contract (*i.e.*, AAR's promise to hire Porter). Aside from this ruling, however, "[a]ll other determinations in the Court's October 23, 2017 Order Denying Plaintiff's and Defendants' Cross Motions for Summary Judgment remain[ed] undisturbed." (Order Granting in Part Pl.'s Mot. for Summ. J., R. 133 at 14, PageID 1255.)

On December 3, 2018, a week before the jury trial began, the district court once again modified its summary judgment decision. This time, however, it did so in an order denying Porter's May 25, 2018 motion in limine to exclude evidence regarding his mitigation of damages. In his motion, Porter proclaimed that the contract at issue constituted a contract for a fixed term of employment under Louisiana law, which therefore entitled Porter to an award of damages for the entire five-year term of employment, pursuant La. Civ. Code art. 2749, regardless of whether he mitigated his damages. In its denial of Porter's motion to exclude evidence, the district court held that the underlying employment contract required AAR to hire Porter as an at-will employee, not for a fixed term of employment.

Following a three-day trial, a jury found that AAR breached its contract with Porter and, as a result, is liable to Porter for damages in the amount of $250,000. The district court entered final judgment on January 7, 2019. On appeal, Porter requests that this Court find that the district court committed reversible error when it ruled that the contract at issue was an at-will employment contract and award Porter damages for the five years of employment he was guaranteed, in accordance with La. Civ. Code art. 2749. Additionally, Porter requests that this Court remand the

case to the district court to allow it to determine the value of the stock options, salary bonuses, and annual employee benefits offered to Porter under the contract, evidence that Porter was prohibited from presenting at trial.

**II.**

We first consider AAR's challenge to Porter's right to appeal the judgment. In short, AAR asserts that Porter's failure to move for post-judgment relief under Rules 50 and 59 of the Federal Rules of Civil Procedure waives his right to challenge the adequacy of the damages awarded. Porter concedes that he did not move for post-judgment relief but argues that post-trial motions were unnecessary based on the grounds raised in his appeal, *i.e.*, whether the district court's determination that the employment contract contemplated an at-will employment relationship between Porter and AAR was improper as a matter of law.

A Rule 59 post-judgment motion is not a prerequisite for filing a direct appeal. *See Howe v. City of Akron*, 801 F.3d 718, 750 (6th Cir. 2015). Similarly, a Rule 50 motion is not a prerequisite for filing a direct appeal of an issue that is purely one of law. *See In re AmTrust Fin. Corp.*, 694 F.3d 741, 750-51 (6th Cir. 2012).

In his appeal, Porter asks this court to determine whether the unambiguous language of the employment contract at issue rendered the contract an at-will or fixed-term employment contract under Louisiana law. Porter only requests review of the damages award if this Court determines that the contract established a fixed-term of employment. Thus, because the threshold issue raised in this appeal is purely a question of law, we may consider "the district court's decision" on appeal "'even in the absence of a post-judgment motion.'" *Id*. at 751 (quoting *Barber v. Louisville & Jefferson Cnty. Metro. Sewer Dist.,* 295 F. App'x 786, 789 (6th Cir. 2008)).

**III.**

"A federal court sitting in diversity applies the choice of law provisions of the forum state," which in this case is Tennessee. *Solo v. United Parcel Serv. Co.*, 819 F.3d 788, 794 (6th Cir. 2016) (citing *Klaxon Co. v. Stentor Electric Mfg. Co.*, 313 U.S. 487, 496 (1941)). Tennessee adheres to the rule of *lex loci contractus*, which presumes that a contract is "to be governed by the law of the jurisdiction in which it was executed absent a contrary intent." *Southeast Texas Inns, Inc. v. Prime Hosp. Corp.*, 462 F.3d 666, 672 n.8 (6th Cir. 2006). The parties agree that Louisiana law governs the substantive matters in this case. Under Louisiana law, issues concerning contract interpretation are considered questions of law and are reviewed *de novo*. *See Sundown Energy, L.P. v. Haller*, 773 F.3d 606, 611 (5th Cir. 2014).

Although Porter's appeal regards the interpretation of an employment contract, this case presents an unusual procedural backdrop that complicates the determination of which standard of review applies. Initially, the district court held that the matter was improper for summary judgment because a reasonable juror could interpret the contract as contemplating either at-will employment or fixed-term employment, thus presenting a genuinely disputed material fact. Then, the district court affirmed this determination in its *sua sponte* partial grant of summary judgment. Finally, in its order denying Porter's motion in limine, the district court held that the contract was one for at-will employment:

> [A]lthough the terms of the contract and related evidence are susceptible to different meanings, as previously found, . . . only one interpretation of the contract, when considering the contract and the evidence as a whole, renders effective all provisions of the contract—an interpretation that the contract contemplates at will employment.

(Order Denying Pl.'s Mot. in Limine, R. 147 at 3, PageID 1360.) "We review a district court's ruling on a motion in limine for an abuse of discretion." *See Louzon v. Ford Motor Co.*, 718 F.3d 556, 560 (6th Cir. 2013) (quoting *Branham v. Thomas M. Cooley Law Sch.*, 689 F.3d 558, 562

Case No. 19-5059, *Porter v. AAR Aircraft Services, Inc., et al.*

(6th Cir.2012)).    As we explained in *Louzon*, courts generally condemn the use of a motion in limine to litigate or relitigate matters that should be resolved via a motion to dismiss or a summary judgment motion:

> Allowing a party to litigate matters that have been or should have been resolved at an earlier stage not only allows those dissatisfied with the court's initial ruling a chance to relitigate, but also deprives their opponents of the procedural protections that attach at summary judgment.

*Id*. at 561-62.  However, a district court "does not abuse its discretion in *sua sponte* granting summary judgment so long as 'the losing party was on notice that it had to come forward with all of its evidence [and had a] reasonable opportunity to respond to all the issues to be considered by the court.'"  *Bennett v. City of Eastpointe*, 410 F.3d 810, 816 (6th Cir. 2005) (quoting *Shelby County Health Care Corp. v. S. Council of Indus. Workers Health & Welfare Trust Fund*, 203 F.3d 926, 931 (6th Cir. 2000)); *see also Petty v. Metro. Gov't of Nashville & Davidson Cty.*, 687 F.3d 710, 721 (6th Cir. 2012) (explaining that the primary concern with resolving summary-judgment matters when they are brought forth in a motion in limine is the lack of notice to the nonmovant and the nonmovant's potential inability to gather and present evidence).

In the present case, both parties previously raised the contract-interpretation issue in their respective motions for summary judgment and reasserted their arguments under the guise of a motion in limine and a response to a motion in limine.  There is nothing to suggest that either party lacked notice of the contract-interpretation issue, nor is there evidence indicating that either party lacked sufficient time to gather and present its evidence.  Thus, given that the parties had notice of the issues being considered, the district court did not abuse its discretion in *sua sponte* granting summary judgment.  *See Bennett*, 410 F.3d at 816-17.  Accordingly, we will treat the district court's ruling as a *sua sponte* partial grant of AAR's motion for summary judgment.

We review a district court's grant of summary judgment *de novo*. *Gillis v. Miller*, 845 F.3d 677, 683 (6th Cir. 2017). Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of showing that no genuine issues of material fact exist. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The nonmoving party "must set forth specific facts showing that there is a genuine issue for trial," and in turn, the reviewing court must determine "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-52 (1986) (internal citations and quotation marks omitted).

## IV.

"Under Louisiana law, a contract is the law between the parties, and is read for its plain meaning." *In re Liljeberg Enterprises, Inc.*, 304 F.3d 410, 439 (5th Cir. 2002) (internal quotation marks omitted). So long as the agreed upon terms are not prohibited by law or public policy, an employer and an employee may negotiate the terms of an employment contract and agree to any terms they see fit. *Read v. Willwoods Community*, 165 So. 3d 883, 887 (La. 2015). "When the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties' intent." La. Civ. Code art. 2046. "This established rule of strict construction does not allow the parties to create an ambiguity where none exists and does not authorize courts to create new contractual obligations where the language of the written document clearly expresses the intent of the parties." *Omnitech Int'l, Inc. v. Clorox Co.*, 11 F.3d 1316, 1326 (5th Cir. 1994).

All employment contracts falling within the purview of Louisiana law are categorized as either fixed term or terminable at will. *Read*, 165 So. 3d at 887. Under a fixed-term contract, "the parties agree to be bound for a certain period during which the employee is not free to depart without assigning cause nor is the employer at liberty to dismiss the employee without cause." *Id.* Conversely, an employer may dismiss an "at-will" employee at any time, for any reason, without the incurring liability for wrongful discharge. *Id.* If an employment contract is silent regarding whether the contractual relationship is for a fixed term or terminable at will, it is presumed that the contract is terminable at will. La. Civ. Code art. 2747; *see also Quebedeaux v. Dow Chem. Co.*, 820 So. 2d 542, 545 (La. 2002) ("When the employer and employee are silent on the terms of the employment contract, the civil code provides the default rule of employment-at-will.")

Porter contends that the underlying contract anticipated Porter's employment with AAR for a fixed term of five years. To support his argument, Porter primarily relies on *Reyes-Silva v. Drillchem Drilling Sols., LLC*, 56 So.3d 1173 (La. Ct. App. 2011). Porter asserts that *Reyes-Silva* stands for the proposition that a contract must be classified as a fixed-term contract if, upon the employee's termination, it creates obligations and liabilities for the employer that would not ordinarily exist in an at-will employment relationship. While it is true that "an employer is generally at liberty to dismiss an [at-will] employee at any time, for any reason, without incurring liability for the discharge," *id.* at 1178, contractually agreeing to a severance clause in an employment contract does not inherently deem that contract a fixed-term employment contract, *see Porbeck v. Indus. Chemicals (US) Ltd.*, 134 So. 3d 234, 242 (La. Ct. App. 2014) (upholding a severance package in the employment-at-will context). Rather, the insertion of a severance clause in a contract is merely a contractual modification to the general rule prohibiting employer liability for discharging an at-will employee without cause. A fixed-term employment contract, in contrast,

would only include a severance clause applicable to a period of employment *after* the employee's fulfillment of the fixed employment term because a fixed-term employee is statutorily guaranteed payment for the entire employment term if terminated without cause. *See* La. Civ. Code art. 2749.

Porter further misconstrues *Reyes-Silva* in stating that "an employment contract was held to be for a *fixed-term* (instead of at-will) because it stated that the plaintiff *could not be terminated by the employer for a period of six months without good cause,* and if it was then [the] employer would be liable to pay to plaintiff $10,000." (Appellant Br. at 19.) *Reyes-Silva*, however, held that the "severance allowance is *not* required for termination *during* the first six months of employment." *Reyes-Silva*, 56 So.3d at 1179 (emphasis added). In contrast, the severance package included in the August 1, 2013 offer of conditional employment *only* affords Porter a right to severance payment during the first five years of his employment:

> Severance: The following sets forth the agreed severance compensation if your employment is terminated by AAR *within the first five years* for reasons other than cause (as defined in AAR corporate policies):
>
> > (i) Termination prior to second anniversary date of employment: two years of base salary of $250,000, less any base salary already paid during the two year period; and
> >
> > (ii) Termination after the second anniversary date of employment: three months['] salary.

(AAR Offer Letter, R. 60-3 at 17, PageID 438 (emphasis added).)

If the district court had classified this contract as a fixed-term employment contract, Porter would be entitled to damages for the promised salary, benefits, bonuses, and stocks for the entire five-year term (less what he had already earned up to the point of his termination) under La. Civ. Code art. 2749. This amount would be significantly larger than the amount of severance pay Porter would receive under the agreed-upon terms of his employment contract with AAR, rendering the severance provision mere surplusage. "Each provision in a contract must be interpreted in light of

the other provisions so that each is given the meaning suggested by the contract as a whole." *Clovelly Oil Co., LLC v. Midstates Petroleum Co., LLC*, 112 So. 3d 187, 192 (La. 2013) (citing La. Civ. Code art. 2050). Accordingly, we "must interpret contract provisions '*so as to avoid neutralizing or ignoring any of them or treating them as surplusage.*'" *Id.* at 194 (emphasis in original) (quoting *John Bailey Contractor, Inc. v. State, DOTD*, 439 So. 2d 1055, 1058 (La. 1983)). Interpreting this contract as a fixed-term employment contract would render the entire severance provision devoid of value. Accordingly, the district court properly concluded that interpreting the underlying contract as one contemplating at-will employment was the only interpretation that rendered all provisions effective.

Finally, Porter attacks the district court's exclusion of evidence regarding the discretionary executive bonuses awarded to other AAR executives, benefits other AAR employees received, and the value of the stock options outlined in the employment contract. As Porter acknowledges, however, these arguments are only viable if this Court determines that the contract is a fixed-term employment contract. Given our determination that Porter and AAR's contract was terminable at will, we need not address these issues.

**V.**

For the foregoing reasons, we **AFFIRM**.